KING, APPELLEE, *v.* MOHRE, APPELLANT.

(No. 4-85-10 — Decided October 2, 1986.)

*Weaner, Zimmerman, Bacon & Yoder, John E. Zimmerman* and *Stephen F. Hubbard,* for appellee.

*Clemens, Korhn, Palmer, Schmenk & Liming* and *Stephen F. Korhn,* for appellant.

GUERNSEY, P.J., This is an appeal by defendant, Dorothy A. Mohre, from a judgment of the Court of Common Pleas of Defiance County granting plaintiff's motion for prejudgment interest.

On December 14, 1982, an automobile collision between the parties resulted in injuries to plaintiff, Barbara A. King. Unable to settle this matter with defendant's insurance company, plaintiff filed suit and eventually received a jury verdict in the amount of $100,000. Plaintiff subsequently filed a motion for prejudgment interest together with a supporting memorandum and an affidavit by plaintiff. Defendant filed a memorandum in opposition, a supplemental memorandum, and an affidavit by defense counsel. The trial court granted the motion for prejudgment interest finding that, in essence, plaintiff had consistently made a demand of $125,000 from the time of the accident and that defendant had failed to make a good faith attempt to settle. Defendant now appeals asserting the following assignment of error.

"The trial court erred in awarding pre-judgment interest for the reason that it is against the manifest weight of the evidence and an abuse of discretion to hold that plaintiff-appellee acted in good faith and defendant-appellant failed to act in good faith during settlement negotiations conducted relative to this cause."

R.C. 1343.03(C) provides:

"(C) Interest on a judgment,

decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

This statute is remedial in nature, in that it merely imposes a civil sanction upon a party for failure to fulfill a duty already imposed by public policy, that is, to make a good faith effort to settle a dispute as early as possible. In order to prevail on a motion for prejudgment interest, the moving party has the burden to prove that it did make a good faith effort to settle and that the party who is to pay the money failed to make a good faith effort. *Mills* v. *Dayton* (1985), 21 Ohio App. 3d 208, 21 OBR 222, 486 N.E. 2d 1209. The settlement efforts of the parties involve a consideration of factual matters which are not normally the subject of the trial of the underlying cause of action in tort. Thus, the legislature required that a hearing be conducted, subsequent to the trial verdict, at which time the court must determine the factual issues as to the bona fides of the respective efforts of the parties to settle the case.

Initially, this court feels compelled to comment on a problem which appears to have repeatedly arisen. Namely, what is the nature of the hearing to determine the settlement efforts of the parties? If it is evidentiary in nature, what type of evidence should be submitted for consideration by the court? If it is not evidentiary, on what basis should the court make its determination? We have previously dealt briefly with this issue in *Cleveland* v. *Selvey* (Aug. 28, 1986), Seneca App. No. 13-85-8, unreported.

A review of the legislative history of R.C. 1343.03(C) does not provide insight into the type of hearing required. The definition of "hearing" in Black's Law Dictionary (5 Ed. 1979) 649 — as a "[p]roceeding of relative formality (though generally less formal than trial) * * *. The introduction and admissibility of evidence is usually more lax in a hearing than in a civil or criminal trial * * *" — is also of little help. The cases to date which have dealt with R.C. 1343.03(C) have not directly addressed this issue, but do present a wide range of evidentiary bases for deciding motions for prejudgment interest. For example, in the Supreme Court's latest case on prejudgment interest, *Kalain* v. *Smith* (1986), 25 Ohio St. 3d 157, 25 OBR 201, 495 N.E. 2d 572, the court makes reference to testimony by plaintiff's and defendant's counsel. However, it is unknown whether the attorneys were actually placed under oath and testified, or whether the reference is to oral argument. In *Huffman* v. *Hair Surgeon, Inc.* (1985), 19 Ohio St. 3d 83, 87, 19 OBR 123, 127, 482 N.E. 2d 1248, 1252, at fn. 6, the court refers to "affidavit[s] and other documents" as the evidentiary basis for its decision. In *Carmo* v. *Frankel* (1984), 17 Ohio Misc. 2d 3, 17 OBR 190, 477 N.E. 2d 1244, the opinion refers to the "decision by the court on the evidence, briefs and arguments of counsel," but does not delineate what constituted the "evidence." In *Roberts* v. *Mut. Mfg. & Supply Co.* (1984), 16 Ohio App. 3d 324, 327, 16 OBR 355, 359, 475 N.E. 2d 797, 801, the court states that it reviewed "the record, with respect to the negotiations," again with no explanation of the specific evidence

which made up the record. Cf. *Black* v. *Bell* (1984), 20 Ohio App. 3d 84, 20 OBR 105, 484 N.E. 2d 739, in which the court discusses in detail the evidence before it on the motion for prejudgment interest.

As stated earlier, the factual determinations required under R.C. 1343.03 (C) are separate from and unrelated to the legal and factual determinations made at the trial on the underlying cause of action. Indeed, Evid. R. 408 deems offers to settle or compromise inadmissible to prove liability or amount of damages. Further, unsworn allegations of facts presented in the motion cannot constitute "evidence" in the proper sense of the term. Cf. 63 Ohio Jurisprudence 3d (1985) 503, Judgments, Section 671; *East Ohio Gas Co.* v. *Walker* (1978), 59 Ohio App. 2d 216, 13 O.O. 3d 234, 394 N.E. 2d 348. Thus, absent agreement by the parties as to another means of proof, we conclude that a hearing on a motion for prejudgment interest must be evidentiary in nature so as to permit a documented basis for the trial court's decision as well as to provide a meaningful record for appellate review.

Having so determined, we must now consider what type of evidence is necessary and admissible. In *Matson* v. *Marks* (1972), 32 Ohio App. 2d 319, 61 O.O. 2d 476, 291 N.E. 2d 491, the court set forth the evidentiary basis needed to vacate a cognovit judgment. Although this case relates to a vastly different type of motion, it does provide an excellent discussion on evidence presented in relation to motions. The court stated:

"Civ. R. 60(B) provides, in part: 'The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules.' Unless the grounds for such relief are such as appear upon the face of the record, there necessarily must be evidence presented to permit a factual determination by the trial court upon the grounds for relief from judgment. Both the Civil Rules and the rules of the trial court are silent upon the procedure for presenting evidence to the court to make such factual determination.

"While in some instances evidence may be adequately presented in the form of affidavits, and in other instances, because of the nature of the grounds for relief, oral testimony may be required, * * *." *Id.* at 326-327, 61 O.O. 2d at 480, 291 N.E. 2d at 497.

In 63 Ohio Jurisprudence 3d (1985) 503-504, Judgments, Section 671, it states:

"Evidence in support of a motion for relief from a judgment may be adequately presented in the form of affidavits. In order to prevail on the motion, the allegations of operative facts must be of such evidentiary quality as affidavits, depositions, answers to interrogatories, written admissions, written stipulations, or other sworn testimony. Unsworn allegations of operative facts contained in the motion are not sufficient evidence upon which to grant the motion." (Footnotes omitted.)

Having concluded that the hearing on the motion must be evidentiary, we now turn our attention to the "evidence" submitted by the parties in the present case. In the trial court's opinion, it stated that the decision was based on "pleadings, professional statements of counsel made during the hearing on the motion, the affidavit filed, and evidence heard by said court." Our own review of the record indicates that plaintiff submitted a memorandum in support of the motion and her affidavit. Defendant submitted a memorandum in opposition to the motion, a supplemental memorandum, and an affidavit by defense counsel. The parties also attached to the memoranda copies of correspondence relating to their negotiations. Addi-

tionally, we consider for review the transcript of the hearing on the motion which consists of some forty-eight pages of argument between the attorneys, rather than testimony by them or by the actual parties.

For the reasons that follow, we conclude that the trial court abused its discretion in awarding plaintiff prejudgment interest as it is against the manifest weight of the evidence.

Initially, we note that the "professional statements of counsel," not rising to the status of judicial admissions, are not evidence and that the trial court may not vacate (or issue) a judgment merely upon the statements of counsel where they are not supported by proof. *Melton* v. *Baylor* (App. 1954), 69 Ohio Law Abs. 503, 118 N.E. 2d 230; 63 Ohio Jurisprudence 3d (1985) 504, Judgments, Section 672.

In order to prevail on a motion for prejudgment interest, the moving party (who prevailed on the tort claim) has the burden to prove that it did make a good faith effort to settle and that the losing party, who is to pay the tort judgment, failed to make a good faith effort. *Mills* v. *Dayton, supra* (21 Ohio App. 3d 208), at 210, 21 OBR at 224, 486 N.E. 2d at 1211. In *Kalain* v. *Smith, supra* (25 Ohio St. 3d 157), the court rejected an attempt to equate "lack of good faith" with "bad faith" and stated:

"Appellant argues that the statutory language 'failed to make a good faith effort' necessarily requires a finding of bad faith. We disagree. The statute requires all parties to make an honest effort to settle a case. A party may have 'failed to make a good faith effort to settle' even when he has not acted in bad faith. *Mills* v. *Dayton* (1985), 21 Ohio App. 3d 208, and *Dailey* v. *Nationwide Demolition Derby, Inc.* (1984), 18 Ohio App. 3d 39, approved; *Ware* v. *Richey* (1983), 14 Ohio App. 3d 3, disapproved.

"A party has not 'failed to make a good faith effort to settle' under R.C 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. * * *" (Footnote omitted.) *Id.* at 159, 25 OBR at 202-203, 495 N.E. 2d at 574.

There is no dispute at present that both sides fully cooperated in discovery proceedings and did not attempt to unnecessarily delay any proceeding. While the plaintiff alleges that defendant failed to properly evaluate her risks and potential liability, the real dispute revolves around whether plaintiff made a good faith monetary settlement demand and whether defendant then responded in good faith.

The trial court found that "the demand of $125,000 made consistently from the time of the accident was well within the ball park of a good faith demand." While it is true that the jury ultimately awarded plaintiff $100,000, there is absolutely no evidence to prove that plaintiff's counsel made such a demand at any time prior to eight days before trial. The only evidence to indicate that such a demand was ever made is plaintiff's affidavit attached to the memorandum in support of the motion wherein it states:

"On March 8, 1984, I again called Mr. Borton [defendant's insurance adjuster] and asked him if he would pay these bills, as I was receiving calls from creditors and letters of demand from collection agencies, and his statement was that they would not make any further payments until after I was seen by their doctor. He also suggested that we settle the case and then my bills could be paid. *At that time* I told

him that I would settle for $125,000.00." (Emphasis added.)

However, it is important to note that this demand was made prior to the involvement of any attorneys. Even if it were relevant, there is no evidence or testimony to indicate that this "demand" was ever re-submitted by plaintiff's attorney to defendant's attorney in any effort of settlement, or even that either attorney was aware that it had ever been made. Indeed, at numerous points during the hearing, plaintiff's attorney argued that he had NOT made a demand prior to eight days before trial, justifying this lack of action by asserting that defendant's failure to properly value plaintiff's injuries precluded effective negotiation, stating:

"* * * At that point there was no use trying to even consider negotiations with Mr. Korhn [defense counsel] because he refused to recognize to say anything but a soft tissue injury wasn't worth anything, was going to correct itself. * * * (Transcript from hearing.)

"* * * I submit all the information that I had available of Barbara King's injury was given Stephen Korhn. I don't think he's going to deny that. I'm simply saying after all information was submitted, Steve Korhn or his company failed or refused to evaluate this case properly and to come up with any good faith to get it resolved. You certainly can't negotiate with someone who would refuse to recognize there's even an injury. * * *" (Transcript from hearing.)

As the proceedings indicate, plaintiff's attorney consistently stated that no demand had been made by him. It is undisputed that several days before trial, defendant offered $15,000 to settle this matter, which was rejected by plaintiff. The day of trial, defendant increased her offer to $22,000, which was also rejected. The trial court, in his opinion, repeatedly terms these offers "ridiculous." Whether or not defen-

dant properly evaluated the plaintiff's injuries, the fact remains that defendant can prove by documented evidence that she made monetary offers, and the plaintiff cannot prove that she either made an initial demand or a counter-demand. Indeed, in plaintiff's Exhibit No. 5, attached to the memorandum in support of the motion, a letter dated September 28, 1984, plaintiff's attorney forwarded copies of medical reports to defense counsel, yet again failed to make a monetary demand:

"* * * Perhaps with this medical report we can discuss some meaningful resolution of this case and/or proceed with discovery and get the matter disposed of. * * *"

In defendant's Exhibit B, a letter from defense counsel to Cincinnati Insurance Company, defendant's insurer, dated November 14, 1984, defense counsel states:

"* * * I called Attorney Zimmerman's office inasmuch as I had not heard from him concerning my $15,000.00 offer of new money in complete settlement. Mr. Zimmerman advised me that that offer has been 'summarily rejected.' He did not make any type of counter demand at that point. In fact, I really do not know what his demand *range* even is. * * *"

We note with approval Judge Markus' comment in his concurring opinion in *Cox* v. *Fisher Fazio Foods, Inc.* (1984), 13 Ohio App. 336, 337-338, 13 OBR 414, 416, 469 N.E. 2d 1055, 1057-1058, wherein he stated:

"I read R.C. 1343.03(C) to require the party seeking prejudgment interest to demonstrate its aggressive *prejudgment settlement efforts* and its adversary's *lack of aggressive prejudgment settlement efforts*. The failure to make a good faith effort is not equivalent to bad faith conduct. *A party's inactivity can constitute a failure to make good faith efforts*

without demonstrating bad faith." (Emphasis added.)

Thus, even if defense counsel did not properly evaluate this case, plaintiff's failure to initiate and pursue settlement demands precluded an award in her favor of prejudgment interest.

The decision as to whether a party's settlement efforts indicate good faith is generally within the sound discretion of the trial court. *Huffman* v. *Hair Surgeon, Inc., supra.* This court will not overturn a finding on this issue unless the trial court's action indicates an abuse of discretion. *Kalain* v. *Smith, supra.* "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Cox* v. *Fisher Fazio Foods, Inc., supra,* at paragraph two of the syllabus; *Steiner* v. *Custer* (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E. 2d 855; *Conner* v. *Conner* (1959), 170 Ohio St. 85, 9 O.O. 2d 480, 162 N.E. 2d 852; *Chester Township* v. *Geauga Cty. Budget Comm.* (1976), 48 Ohio St. 2d 372, 2 O.O. 3d 484, 358 N.E. 2d 610.

Although what was before the trial court was not all evidence, as we have previously discussed, we will, nevertheless, for the purposes of this decision only, assume that it was evidence. However, even in the face of that assumption, we have found no "evidence" whatsoever to support the trial court's conclusion that plaintiff made a demand of $125,000 "from the time of the accident," or to indicate that plaintiff ever made a settlement demand prior to eight days before the trial. We conclude that it was an abuse of discretion to have awarded plaintiff prejudgment interest, and accordingly reverse the decision of the lower court, rendering final judgment on that issue for defendant.

*Judgment reversed.*

COLE and MILLER, JJ., concur.